**STATE of Missouri, Respondent,**

v.

**Charles POLLEY d/b/a A–1 Construction and Exteriors, Appellant.**

**No. WD 56400.**

Missouri Court of Appeals,
Western District.

Oct. 5, 1999.

David E. Martin, Harold W. Fraser, Independence, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, J. Dale Youngs, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., EDWIN H. SMITH, and HOWARD, JJ.

ROBERT G. ULRICH, Presiding Judge.

Charles Polley, d/b/a A–1 Construction and Exteriors, appeals the finding of fact, conclusions of law, and judgment of the trial court finding he had engaged in "unfair practices" as prohibited by the Missouri Merchandising Practices Act, Chapter 407, RSMo 1994. Mr. Polley raises several points on appeal. He claims that the trial court erred by (1) misapplying the law holding that Mr. Polley had engaged in "unfair practices" under section 407.020 [1] because some of the contracts with consumers were formed prior to the effective date of 15 CSR 60–8.020, which defines "unfair practice," (2) ordering restitution on behalf of consumers Elmore, Bass, Braverman, and Pierron because the State failed to present evidence of ascertainable loss, (3) ordering restitution to a consumer who did not contract or pay Mr. Polley directly, (4) ordering restitution to consumers who failed to mitigate damages, (5) failing to dismiss the State's petition under the doctrines of res judicata and collateral estoppel, and (6) imposing penalties which are excessive and thus prohibited by the Eighth Amendment.

The judgment of the trial court is affirmed.

### Facts

Charles Polley is a sole proprietor who does business under the name "A–1 Construction and Exteriors." His business is engaged in the advertising and sale of home repair and improvement services including the installation of maintenance-free siding and replacement windows. In Mr. Polley's contract negotiations with various consumers to perform work for them, he represented that he provided a three-year guarantee on the workmanship of the work performed by him and a lifetime guarantee on the materials used in the project. After Mr. Polley completed the work, consumers noted various problems with Mr. Polley's work, including siding improperly installed so that it sagged or fell off the building, incomplete installation, substandard installation of windows and doors so that they would not function properly, and further damages to the consumers' homes due to Mr. Polley's attempts at installation. Furthermore, Mr. Polley evaded attempts by disgruntled

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

consumers to contact him, and when he spoke to dissatisfied consumers, he made promises to honor his guarantees that he never fulfilled.

In 1987, in response to the consumer complaints against Mr. Polley, the State of Missouri, acting through the Attorney General, sought and obtained a permanent injunction against Mr. Polley, then doing business as "Brite Side Construction." The injunction prohibited Mr. Polley from failing to honor his workmanship and materials guarantees. In a subsequent proceeding brought by the Attorney General, Mr. Polley was fined $10,000 in civil penalties for violating the 1987 injunction.

In further response to Mr. Polley's conduct, the Attorney General brought the present civil action against Mr. Polley alleging that he had engaged in unlawful merchandising practices as prohibited by the Missouri Merchandising Practices Act, Chapter 407("the Act"). At trial, the State presented the testimony of five consumers who had work performed on their homes by Mr. Polley during the period of August 1993 through April 1995.

The trial court concluded that Mr. Polley had engaged in the following conduct prohibited by section 407.020: misrepresentation of his intention to provide an unlimited three-year guarantee on his workmanship and the extent of the guarantee, failure and refusal to honor the three-year guarantee on workmanship, failure and refusal to respond in good faith to consumers' requests to honor his contract, failure to honor promises to consumers to repair his work, misrepresentation that he would perform the work in a competent and workmanlike manner, misrepresentation to consumers that no down payment was required, misrepresentation to consumers on how they could contact him by providing an inaccurate address, and misrepresentation in his Yellow Page advertising that he was licensed and insured. The court concluded that Mr. Polley had violated the Act fifteen times and ordered him to pay a civil penalty of $500 per violation, or $7,500. In addition, the

court permanently enjoined him from certain conduct and required that he post a $25,000 bond or letter of credit as security against future claims. The court also ordered restitution totaling $15,535 to be distributed to consumers Elmore, Bass, Braverman, and Pierron. It also ordered him to reimburse the Attorney General's $15,530 costs of investigation and prosecution, pay a $5,000 civil penalty for violating the consent preliminary injunction, and to make a $1,554.50 contribution to the Merchandising Practices Revolving Fund. This appeal followed.

## Standard of Review

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## I. Unfair Practices Prior to 15 CSR 60–8.020

■ As Mr. Polley's first point on appeal, he contends that the trial court erred in declaring and applying the law when it found that he had engaged in unfair practices because Mr. Polley formed the contracts with consumers Bass, Pierron, and Braverman prior to the effective date of 15 CSR 60–8.020, which defines "unfair practice."

Missouri enacted its original Merchandising Practices Act in 1967, Ch. 407. In 1985 the Missouri General Assembly amended section 407.020, by adding the term "unfair practice" to the list of prohibited conduct under the Act and granting the attorney general authority to promulgate rules setting out the exact scope of Missouri's law and the meaning of the words employed in the Merchandising Practices Act. *State ex rel. Nixon v. Telco Directory Pub.,* 863 S.W.2d 596, 601 (Mo. banc 1993). Nine years after "unfair practice" was added to section 407.020, the attorney general promulgated interpreta-

tive rules defining "unfair practice" as set forth in 15 CSR 60–8.020. These rules had an effective date of September 30, 1994.

Prior to the promulgation of 15 CSR 60–8.020, no statutory or regulatory definition of "unfair practice" existed under the Act. Cases decided after the inclusion of "unfair practice" in the statute but prior to the promulgation of 15 CSR 60–8.020 left to the courts determination whether each particular charged instance violated fair dealing. *State ex rel. Webster v. Areaco Inv. Co.,* 756 S.W.2d 633, 635 (Mo.App. E.D.1988). In *Areaco,* the court noted that section 407.020 did not define the term "deceptive practices," and stated that "this was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions." *Id.* Review of the sparse case law applying section 407.020 discloses no conflict in the law between what constitutes "unfair practice" prior and subsequent to the promulgation of 15 CSR 60–8.020. The CSR further articulates what constitutes "unfair practice" and does not state a different standard from section 407.020.

All of Mr. Polley's described conduct occurred after 1985, the date "unfair practices" was added to section 407.020.1, RSMo 1985; therefore, all his conduct is subject to judicial scrutiny as "unfair practice" under the statute. The fact that the CSR interpretative definition of "unfair practice" did not become effective until after Mr. Polley had contracted with consumers Braverman, Bass, and Pierron does not make section 407.020 inapplicable to Mr.Polley's pre-CSR actions. Point one is denied.

## II. Ascertainable Loss Required by Section 407.100.4

■ Mr. Polley contends as his second point on appeal that the trial court erred in awarding restitution to consumers Elmore, Bass, Braverman, and Pierron because the State failed to present evidence of the "specific ascertainable loss" suffered by the consumers.

Section 407.100.4 provides:

The court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice, or solicitation, or any combination thereof, declared to be unlawful by this chapter.

The court record supports the court's finding that consumers Elmore, Bass, Braverman, and Pierron suffered ascertainable losses due to Mr. Polley's "unfair practices." Consumers' ascertainable losses included amounts they paid or will have to pay in the future to have Mr. Polley's siding removed and re-installed, refund of a down payment on a partially completed job for which Mr. Polley represented no down payment was required, and repairs to Mr. Polley's installation of an improperly functioning rain removal system. Because the record reflects that the consumers had ascertainable losses resulting from Mr. Polley's practices prohibited by the Merchandising Practices Act, the trial court's order of restitution, pursuant to section 407.100.4, on behalf of consumers Elmore, Bass, Braverman, and Pierron is supported by the evidence. Point two is denied.

## III. Parties Eligible for Restitution Under Section 407.100.4

■ Mr. Polley contends, in his third point on appeal, that the trial court erred in awarding restitution to the state on behalf of consumer Braverman because Mr. Braverman did not enter into a contract directly with Mr. Polley, nor did he pay for Mr. Polley's services directly, instead the transaction was conducted through Mr. Braverman's builder.

Section 407.100.4 allows the circuit court, in its discretion, to enter an order of restitution, "payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation ... declared to be unlawful by this chapter." The statute's broad language of "any person who has suffered any ascertainable loss" contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct under the Act are included among those eligible to receive restitution. The consumer who receives the product or services through a third party such as a builder would have no restitution remedy under the statute if Mr. Polley's position were correct. The General Assembly's intent is evinced by the plain and inclusive language of the statute. The consumer of the siding material sold and installed by Mr. Polley is included within the meaning of the statute as one for whom restitution shall apply. To hold otherwise would undermine the fundamental purpose of the Act: the protection of consumers.

The record shows that Mr. Braverman has suffered an ascertainable loss by having to repair or replace the siding defectively installed by Mr. Polley. Therefore, he falls within the class of persons the statute was designed to benefit, and, thus, the trial court did not err in awarding restitution on his behalf under the statute. Point three is denied.

### IV. Consumer's Failure to Mitigate Damages

■ Mr. Polley's fourth point on appeal alleges that the trial court erred in awarding restitution to the state on behalf of consumers Bass because the Basses failed to mitigate their damages by retaining the improperly measured windows purchased and partially installed by Mr. Polley.

Rule 55.08 requires all applicable affirmative defenses to be raised in the responsive pleading accompanied by "a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Under Rule 55.08, a party is required to put the opposing party on notice of each affirmative defense it intends to rely on or the defense is waived. *Greene County v. State*, 926 S.W.2d 701, 704 (Mo.App. W.D.1996). The failure to mitigate damages is an affirmative defense. *Blue Ridge Center Ltd. Partnership v. Zadeh*, 943 S.W.2d 357, 359 (Mo. App. W.D.1997). Mr. Polley did not plead the defense of failure to mitigate damages in his answer filed on October 14, 1997; therefore, pursuant to Rule 55.08, he waived this defense. Accordingly, the sufficiency of the Basses mitigation measures was waived and need not be examined. Point four is denied.

### V. Res Judicata and Collateral Estoppel

As his fifth point on appeal, Mr. Polley contends that the trial court erred in overruling his motion to dismiss because the doctrines of res judicata and collateral estoppel barred the State's petition for injunctive relief, civil penalties, restitution and other relief.

#### Prior Case: No. CV87–15165

In June 1987, the State filed suit in the Circuit Court of Jackson County at Independence against Mr. Polley alleging he had failed to honor guarantees he had made to consumers in violation of Missouri's Merchandising Act. Default judgment was entered against Mr. Polley on December 19, 1987, in which he was permanently enjoined and prohibited from failing to honor product and workmanship guarantees and failing to provide lien waivers. On August 7, 1997, the Attorney General filed a motion for a show cause order and an order for civil penalties alleging that Mr. Polley had violated the 1987 injunction. At a hearing on October 3, 1997, the State called five consumers, including Mr. Braverman and Mr. Elmore,

to testify about their experiences with Mr. Polley. The trial court entered judgment on October 9, 1997, finding that Mr. Polley's conduct with regard to the five consumers called by the State constituted five violations of the 1987 injunction and imposing a civil penalty of $2,000 per violation.

### Present Case: No. CV97–19770

On August 8, 1997, the State filed its petition for injunctive relief, civil penalties, restitution and other relief in the present case. The parties entered into a consent preliminary injunction on October 2, 1997 in which Mr. Polley agreed that prior to entering into contracts with consumers, he would inform such consumers, in writing, that his workmanship is not licensed, bonded or insured. At trial, the State called two of the same witnesses it used in the 1997 hearing with whom Mr. Polley had entered into agreements to perform various kinds of home repair and improvement work: Mr. Elmore and Mr. Braverman. The court found that Mr. Polley had violated section 407.020.1 a total of fifteen times and ordered him to pay a civil penalty of $500 per violation, or $7,500. The court also permanently enjoined Mr. Polley from conduct precluded by the preliminary injunction and required that he post a $25,000 bond or a letter of credit as security against future claims. The court also ordered Mr. Polley to pay restitution, reimburse the attorney general's costs, pay a $5,000 civil penalty for violating the October 2, 1997 consent preliminary injunction, and make a contribution to the Merchandising Practices Revolving Fund.

### Res judicata claim

Res judicata, or claim preclusion, bars relitigation of the same cause of action by the same parties or privities in a particular case if the two actions have the following common "identities:" 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the parties to the action; and 4) identity of the quality of the person for or against whom the claim is made. *Chaney v. Cooper*, 954 S.W.2d 510, 516 (Mo.App. W.D.1997). Res judicata applies not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time. *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. banc 1991).

Mr. Polley argues that the previous order imposing civil penalties on him precludes further action by the State because the same consumer complaints were used in both proceedings. For res judicata to bar this action, the previous claim must have been for the same cause of action as the subsequent, precluded claim. In this case, res judicata does not preclude this case because the two actions do not involve identical "things sued for" or cause of action. In the first action against Mr. Polley, the State was seeking civil penalties under section 407.110 due to Mr. Polley's violating the 1987 injunction. In the present action, the State was seeking restitution and civil penalties based upon Mr. Polley's violation of sections 407.020.1 and for violations of section 407.110 for breach of the 1997 consent preliminary injunction.

### Collateral estoppel claim

Collateral estoppel, or issue preclusion, bars relitigation of issues that have been determined in a prior proceeding. *Smith v. Smith*, 985 S.W.2d 829, 835 (Mo.App. W.D.1998). To determine whether collateral estoppel applies, the court must examine four factors: 1) whether the issue decided in the prior adjudication was *identical* to the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is

asserted had full and fair opportunity to litigate the issue in the prior suit. *King*, 821 S.W.2d at 500.

■ Mr. Polley's collateral estoppel argument fails because the issues in the present case are different than the issues before Judge William Kramer in the 1987 case, No. CV87–15165. Judge Kramer's order was entered pursuant to section 407.110 to punish Mr. Polley for his violations of the terms of the 1987 injunction. The issue before Judge Kramer was whether Mr. Polley had violated the 1987 permanent injunction by failing to honor guarantees on his workmanship and on the products he installed. In contrast, the issues in the present case are whether Mr. Polley engaged in unfair practices as prohibited by section 407.020 and whether he violated the 1997 consent preliminary injunction. The fact that the same witnesses were used by the State in proving both cases does not automatically invoke collateral estoppel. Therefore, as the issues litigated are not identical, the State's present suit against Mr. Polley for violation of section 407.020 is not barred by the doctrine of collateral estoppel. Point five is denied.

## VI.  Excessive Fines

In his final point on appeal, Mr. Polley contends that the trial court erred in ordering him to pay civil penalties of $7,500, the Attorney General's costs of investigation and prosecution of $15,350, a civil penalty of $5,000 for violating the preliminary injunction, and requiring him to post a bond or a letter of credit in the amount of $25,000 because these penalties and bond are excessive and thus prohibited by the Eighth Amendment.

■ The United States and Missouri Constitutions both provide that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII; MO Const. art. I, § 21. The term "fine" as used in the Excessive Fines Clause, denotes payment extracted by the government and payable to the govern-

ment. *Lilley v. State of Missouri*, 920 F.Supp. 1035, 1044 (E.D.Mo.1996), *aff'd*, 111 F.3d 135 (8th Cir.1997).

■ Punishment within statutory limits cannot as a matter of law be held cruel and unusual when the statute authorizing the punishment is not invalid and when the punishment imposed is within the range prescribed by the legislature. *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980). A punishment within the statutory limits is not cruel and unusual unless it is so disproportionate as to shock the moral sense of all reasonable men. *State v. Trader Bobs, Inc.*, 768 S.W.2d 183, 188 (Mo.App. E.D.1989).

### Section 407.100.6  Penalties

■ Mr. Polley contends that the court erred in ordering him to pay civil penalties of $500 per violation pursuant to section 407.100.6. Under this section, the court "may award to the state a civil penalty of not more than one thousand dollars per violation; except that, if the person who would be liable for such penalty shows, by preponderance of the evidence, that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed."

The court found that Mr. Polley violated section 407.020 a total of fifteen separate times with regard to the consumers who testified at trial. The court then imposed civil penalties of $500 fine per violation, pursuant to section 407.100.6. As each assessed per violation penalty falls within the statutorily prescribed range, each fine is not considered excessive per se. Further, as Mr. Polley has not alleged that violation of the statute was due to a bona fide error, the trial court did not err in imposing $500 per violation fine.

### Assessment of Court Costs

■ Next, Mr. Polley contends that the trial court erred in ordering him to pay

$15,350, the Attorney General's costs of investigation and prosecution. Section 407.130 specifically authorizes that "[i]n any action brought under the provisions of section 407.100, the attorney general is entitled to recover as costs, in addition to normal court costs, the costs of the investigation and prosecution of any action to enforce the provisions of this chapter."

At trial, the State presented evidence supporting the costs incurred by the Attorney General's office. Therefore, the trial court did not err in ordering Mr. Polley to pay the Attorney General's costs of investigation and prosecution totaling $15,350, pursuant to section 407.130.

### Section 407.110  Penalties

■ The third penalty Mr. Polley contends the trial court erred in ordering him to pay is the $5,000 penalty imposed for violating the October 2, 1997, consent preliminary injunction. Section 407.110 provides that:

> Any person who violates the terms of an injunction, an order to make restitution, or any other judgment or order issued under section 407.100 shall forfeit and pay to the state a civil penalty of not more than five thousand dollars per violation. For the purposes of this section, the circuit court of a county issuing an injunction or restitutionary order shall retain jurisdiction, and the cause shall be continued, and in such cases the attorney general acting in the name of the state may petition for recovery of civil penalties.

Furthermore, section 407.100.8 provides that "[v]iolation of any such consent judgment or consent injunction shall be treated as a violation under section 407.110."

On October 2, 1997, the parties consented to the court's preliminary injunction in which Mr. Polley agreed that prior to entering into contracts with consumers he would inform such consumers, in writing, that he is not licensed, bonded or insured regarding his workmanship. The trial court found that subsequent to the preliminary injunction, Mr. Polley failed to make the required disclosures to consumer Wagner. As the trial court found that Mr. Polley had violated the preliminary injunction and the penalty imposed falls within the statutorily prescribed range of punishment, the trial court did not err in imposing the $5,000 fine for violation of the preliminary injunction.

### Posting bond or letter of credit

■ Mr. Polley also contends that the trial court erred in requiring him to post a $25,000 bond or letter of credit in order to conduct his business. The court permanently enjoined Mr. Polley from, among other things, marketing, advertising, offering, selling and/or promoting his services, products or guarantees on his workmanship, unless and until such time he posts a bond or letter of credit in the amount of $25,000. The bond or letter of credit is to be used as security against any future violations of the Act.

Section 407.100.3 authorizes a court to "make such orders or judgments as may be necessary to prevent such persons from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter."

Considering Mr. Polley's business and legal history, requiring a bond or letter of credit for future claims is a reasonable measure and within the court's discretion under section 407.100.3. The $25,000 bond or letter of credit ordered by the court is not excessive. Point six is denied.

The judgment of the trial court is affirmed.

All concur.