**PORTS PETROLEUM COMPANY, INC. OF OHIO, an Ohio Corporation, Appellant,**

v.

**Jeremiah W. (Jay) NIXON, Attorney General of the State of Missouri, and Missouri Petroleum Marketers Association / Missouri Association of Convenience Stores, Respondents.**

**No. SC 82473.**

Supreme Court of Missouri, En Banc.

Jan. 31, 2001.

David M. Harris, John E. Petite, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Douglas M. Ommen, Asst. Atty. Gen., Jefferson City, Michael J. Delaney, Assistant Attorneys General, St. Louis, for respondent Mo. Attorney General.

James B. Deutsch, Marc H. Ellinger, Jefferson City, for respondent Mo. Petroleum Marketers Assn./Mo. Assn. of Convenience Stores.

LIMBAUGH, Judge.

Plaintiff, Ports Petroleum Company, Inc. of Ohio (Ports), appeals the circuit court's entry of summary judgment in favor of defendants, Attorney General Jeremiah W. Nixon and Missouri Petroleum Marketers Association/Missouri Association of Convenience Stores on Ports' claims for declaratory and injunctive relief. Ports asserts that: (1) the attorney general did not have authority to issue a civil investigative demand (CID) under the Merchandising Practices Act (MPA), sec. 407.010, et seq., RSMo 1994, to investigate alleged violations of the Motor Fuel Marketing Act (MFMA), secs. 416.600 to 416.640, RSMo Supp.1998; and (2) the MFMA (a) violates the Due Process Clauses of the United States Constitution and article I, section 10 of the Missouri Consti-

tution because it "is not rationally related to its putative goal of enhancing competition in the motor fuel industry;" (b) violates the Equal Protection Clause of the United States Constitution and article I, section 2 of the Missouri Constitution because it "operates in a discriminatory fashion against unbranded retailers [such as Ports] and to the distinct advantage of branded retailers;" and (c) violates the Supremacy Clause of the United States Constitution, because it "irreconcilably conflicts with federal antitrust law." This Court has jurisdiction by virtue of the constitutional challenges to the MFMA. Mo. Const. art. V, sec. 3. Although this Court determines, as will be explained, that the constitutional challenges are not ripe for adjudication, jurisdiction is retained, nonetheless. *See Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 52 (Mo. banc 1999).

Ports, an independent marketer of generic, unbranded motor fuels, owns and operates one gas station in Missouri, a "Fuel Mart" on I–44 in Franklin County. The attorney general invoked the MPA to serve Ports with a CID on the ground that "there is reason to believe that [Ports has] engaged in or [is] engaging in unlawful practices in connection with the sale or advertisement of the merchandise, to wit: engaging in the unfair practice of offering motor fuel for sale at a price below cost, with the intent to injure competition." Ports challenged the attorney general's authority to issue a CID to investigate suspected MFMA violations by filing a petition to set aside the CID. The attorney general followed with an answer, counterclaim and motion to enforce the CID, all alleging that sales of motor fuel below cost with an intent to injure competition is a violation of the MFMA, which, in turn, is an "unfair practice" under the MPA that warrants use of the CID power. In a separate suit, Ports sought declaratory relief on the constitutional claims outlined above and also requested an injunction to prohibit enforcement of the unconstitutional provisions. The circuit court consolidated the two cases and allowed the Petroleum Marketers and Convenience Store Association to intervene as parties-defendant. Thereafter, the parties filed cross-motions for summary judgment, and the court entered judgment for defendants on all issues.

■ On appeal, the dispositive first issue, which is entirely a question of law, is whether the attorney general has the authority to invoke the CID power of the MPA to investigate a possible violation of the MFMA. Section 407.020, the substantive component of the MPA, states in pertinent part:

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . .

The CID power, which is defined in relation to the "unlawful practice" of sec. 407.020, is set out in sec. 407.040:

1. When it appears to the attorney general that a person has engaged in or is engaging in any method, act, use, practice or solitication [sic] declared to be unlawful by this chapter . . . he may execute in writing and cause to be served upon any person who is believed to have information, documentary material, or physical evidence relevant to the alleged or suspected violation, a civil investigative demand requiring such person to appear and testify, or to produce relevant documentary material or physical evidence [f]or examination. . . .

In contrast, the substantive part of the MFMA provides:

1. It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel below cost as defined in subdivision (2) of section 416.605, if:

(1) The intent of the sale or offer is to injure competition; or

(2) The intent of the sale or offer is to induce the purchase of other merchandise, to unfairly divert trade from a competitor, or otherwise to injure a competitor.

Unlike the MPA, the MFMA has no express CID power. Therefore, to invoke the MPA's CID power, the attorney general must establish that a violation of the MFMA—a sale of motor fuel below cost with the intent to injure competition—is also an "unlawful practice" under the MPA. However, the only category of "unlawful practice" that might encompass the MFMA's proscribed sale of motor fuel below cost is the category of "unfair practice," as respondents concede that Ports has not engaged in deception, fraud, false pretenses, or any other kind of conduct declared to be unlawful under the MPA. Thus, according to Ports' cynical, but accurate account of the situation, "the Attorney General has attempted to secure CID power by slapping an 'unfair practice' label on Ports' alleged sales of motor fuel below cost in an effort to bootstrap his Motor Fuel Act investigation to the Merchandising Practice Act." Whether the attorney general's action is a "sleight-of-hand" to overcome the "obvious lack of statutory authority" as Ports characterizes it, or a valid and obligatory exercise of statutory authority, as the attorney general would have it, can only be resolved by determining the meaning of the term "unfair practice," which unfortunately has no statutory definition.

▆ Absent a statutory definition, this Court considers the plain and ordinary meaning of the words themselves, *Budding v. SSM Healthcare System*, 19 S.W.3d 678, 680 (Mo. banc 2000), which, in this case, are unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree. In fact, to reflect that literal reading of the statute, the attorney general promulgated a regulation, 15 CSR 60–8.02, that states:

(1) An unfair practice is a practice which—

(A) Either—

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

Notwithstanding this regulation, application of the statute to the case at bar gives rise to an ambiguity. On one hand, a sale of motor fuel below cost is in no way an "unfair practice ... in connection with the sale" from the buyer's standpoint, it is indeed a benefit to the buyer. On the other hand, that same sale is an unfair practice from the standpoint of competition, and perhaps ultimately from the standpoint of other buyers and consumers, and, in that sense, the legislature has made the sale a statutory unfair practice, of sorts.

▆ Given the as-applied ambiguity of the term "unfair practice," this Court draws on the principal rule of statutory construction, which is to ascertain the intent of the legislature. *Gott v. Director of Revenue*, 5 S.W.3d 155, 159 (Mo. banc 1999). "When construing a statute, this Court must consider the object the legislature seeks to accomplish with an eye towards finding resolution to the problems addressed therein." *Id.* In this case, that intent admittedly is not very clear, but it may be gleaned somewhat from the general structure and apparent purpose of the MPA compared with that of the MFMA. Initially, the as-applied ambiguity of the term "unfair practice" is itself proof of the divergent purposes of the two statutes. The creation of the ambiguity by the attempted application of the MPA's unfair practice provision to the MFMA is an il-

logical result the legislature surely would not have intended. In addition, a critical distinction may be made between the MPA, the apparent focus of which is the protection of consumers who are the actual buyers in a sale, and the MFMA, the focus of which is not to protect the actual buyers, but to protect competition instead. The purpose of protecting competition, of course, is ultimately to protect buyers/consumers who eventually could be harmed by monopolistic takeovers in the marketplace, but those buyers/consumers are not initially harmed by the sale itself. Thus, the sales addressed by the MFMA are not those tainted by conventional unfair practices/consumer fraud, which the MPA addresses.

The dissent's argument that the majority relies on disagreement with economic theory to support its construction of the statute is puzzling. No economic theory need be applied to discern that selling a product to a consumer at a price below the seller's cost does not injure the consumer. Indeed only by resorting to economic theories that involve the application of several variables and factual assumptions not apparent in the MPA may one extrapolate that a sale below the seller's cost is harmful to any consumer.

Although it is a close question, this Court concludes that the MPA and the MFMA operate independently, that the two statutes were not intended to overlap, and that a sale of motor fuel below cost under the MFMA is not the kind of "unfair practice" encompassed by the MPA. Accordingly, the attorney general has no authority to invoke the CID power conferred by the MPA.

By resolving the CID issue against the attorney general, the constitutional issues presented in Ports' declaratory judgment action are no longer ripe for adjudication. A "ripe controversy" is one of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Missouri Health Care Ass'n v. Attorney General*, 953 S.W.2d 617, 621 (Mo.

banc 1997). "A mere difference of opinion or disagreement on a legal question is insufficient, but parties must show their rights and liabilities are affected." *Akin v. Director of Revenue*, 934 S.W.2d 295, 298 (Mo. banc 1996). In the context of the constitutional challenge to a statute, the state's attempted enforcement of the statute makes the controversy ripe. *Missouri Health Care*, 953 S.W.2d at 621. In this case, the state's attempted use of the CID power triggered a real and immediate controversy because use of the CID power was the first step toward the attempted enforcement of the MFMA against Ports. However, having determined that use of the CID power was improper, and in the absence of some other effort toward the attempted enforcement of the statute, a real and immediate controversy is no longer present.

The judgment is reversed.

PRICE, C.J., COVINGTON, WHITE, HOLSTEIN and BENTON, JJ., concur.

WOLFF, J., dissents in separate opinion filed.

WOLFF, Judge, dissenting.

The Missouri Merchandising Practices Act, at section 407.040, authorizes the attorney general to use a "civil investigative demand" to investigate possible violations of the merchandising practices act. A civil investigative demand requires "such person to appear and testify, or to produce relevant documentary material or physical evidence" in accordance with the civil investigative demand "concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce or the conduct of any solicitation that is the subject matter of the investigation." Section 407.040, RSMo. 1994.

The principal opinion correctly focuses the inquiry on whether a violation of the Motor Fuel Marketing Act, sections 416.600 to 416.635, RSMo Supp.1998, con-

stitutes an "unfair practice" within the meaning of the merchandising practices act, specifically section 407.020.[1] The term "unfair practice" is not defined in the statute; but it is hard to imagine a broader concept. The attorney general is given the authority, in section 407.145, to promulgate "all rules necessary to the administration and enforcement" of the merchandising practices act. Pursuant to that authority, the attorney general promulgated 15 CSR 60–8.02, which defines "unfair practice" as follows:

(1) An unfair practice is a practice which—

    (A) Either—

        1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; *or*

        2. Is unethical, oppressive or unscrupulous; *and*

    (B) Presents a risk of, or causes, substantial injury to consumers. (Emphasis added.)

From the structure of the sentences in this regulation, it would appear that an unfair practice can simply be a practice that "offends any public policy as . . . established by statutes . . . of the state" and also presents "a risk of . . . substantial injury to consumers."

A practice that violates the motor fuel marketing act would fit this definition. Petroleum marketers occasionally engage in below-cost competition in order to drive their competitors from the field. Such competition obviously benefits consumers in the short run. In the long run, however, it is probably the legislature's judgment that such competition produces an oligopolistic market in which the remaining players can inflict uncompetitively high prices on consumers. *See Fleming Foods v. Runyan,* 634 S.W.2d 183, 186–188 (Mo. banc 1982).

In ascribing this intent to the legislature in enacting sections 416.600 to 416.635, it is not necessary to agree with the legislature as to the existence of the evil or with the remedy that the legislature has prescribed. But that is not the Court's function. The legislature has declared that it is unlawful "to sell or offer to sell motor fuel below cost . . . if . . . the intent of the sale or offer is to injure competition. . . ." Section 416.615.1.[2] The economic theory underlying this statute may be wrong or foolish. The principal opinion points out that sale of motor fuel below cost "is indeed a benefit to the buyer." But the Court's job is not to judge the wisdom of the economic theory of the regulatory scheme, but to apply the law.

1. Section 407.020 provides in pertinent part:
   The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . .

2. Section 416.615 in its entirety provides:
   1. It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel below cost as defined in subdivision (2) of section 416.605, if:
   (1) The intent of the sale or offer is to injure competition; or
   (2) The intent of the sale or offer is to induce the purchase of other merchandise,
   to unfairly divert trade from a competitor, or otherwise to injure a competitor.
   2. It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel at a price lower than the seller charges other persons at the same time and on the same level of distribution, if the intent of the sale or offer is to injure competition.
   3. It is unlawful for a person engaged in commerce in this state to sell or transfer motor fuel to itself or an affiliate for resale in this state on a different marketing level of distribution at a transfer price lower than the price it charges a person who purchases for resale at the same time and on the same level of distribution, if the intent of the sale or transfer is to injure competition.

The principal opinion does not challenge the authority of the attorney general to issue the regulation, nor does it find the regulation to be invalid. To the contrary, the regulation, as stated above, is explicitly authorized by section 407.145. Because the concept of "unfair practice" in section 407.020 is so broad, the regulation's definition is actually a limitation on the concept and the attorney general's authority, not an expansion of his authority. *See State v. Polley,* 2 S.W.3d 887, 890–891 (Mo.App. 1999).

An injury to competition would meet the test of the attorney general's regulation, that is, that the practice under investigation offends the law of the state and presents a risk of substantial injury to consumers. 15 CSR 60–8.02.

The civil investigative demand is an investigative tool provided to the attorney general by statutes that give broad authority to ensure that commerce in this state is beneficial to consumers. There is nothing in the law that prohibits the attorney general from investigating violations of the motor fuel law, and in fact it is his duty to do so. Nothing, of course, forbids the attorney general from investigating the case the way a lawyer would without the power of a civil investigative demand.

Without being able to use the civil investigative demand, the attorney general may be in the position of having to sue first and ask questions later. The civil investigative demand authorizes him to ask questions first, and then, if the investigation shows there is a basis for suit, to bring an action under the relevant statute.

This civil investigative demand certainly is intrusive as to Ports Petroleum, and the resulting action may conflict with one's favorite economic theories. But the attorney general does have the law on his side, and ought to be permitted to use the tool of the civil investigative demand which section 407.040 gives him.