**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00407-CR**
_____

**JULIA RHOTON ANDREWS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D-130174-R**

**MEMORANDUM OPINION**

Contending that the evidence is legally and factually insufficient to support

the jury's murder conviction, Julia Rhoton Andrews appeals from her conviction

for murder. In her appeal, Andrews claims the evidence shows the decedent's

death was accidental, or shows that her decision to shoot the decedent was justified

because she acted in self-defense. *See* Tex. Penal Code Ann. § 19.02 (West 2011).

We affirm the trial court's judgment.

## Background

In an amended indictment, a grand jury indicted Andrews for Robert Peddy's murder. The indictment alleges that Andrews intentionally and knowingly caused Peddy's death by shooting him with a firearm, or that she committed an act clearly dangerous to human life by shooting him, intending to cause him a serious bodily injury. *Id*. at § 19.02(b)(1), (2). At the conclusion of Andrews' trial, the charge the trial court submitted allowed the jury to consider whether Andrews, instead of murder, recklessly caused Peddy's death. *Compare id.*, *with* Tex. Penal Code Ann. § 19.04 (West 2011). The trial court also instructed the jury on Andrews' claim of self-defense. *See* Tex. Penal Code Ann. §§ 9.31, 9.32 (West 2011). On completing their deliberations, the jury found Andrews guilty of murder, gave her a forty-four year sentence, and a $4,400 fine.

Andrews raises one issue in her appeal. According to Andrews, the evidence admitted during her trial is legally and factually insufficient to support the jury's determination that she acted with the intent to cause Peddy's death or to cause him a serious bodily injury.

## Standard of Review

Legal and factual sufficiency challenges are reviewed under the standards articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323

2

S.W.3d 893, 912 (Tex. Crim. App. 2010). In reviewing a sufficiency challenge in a criminal case, the evidence is viewed, on appeal, in the light most favorable to the verdict. *Id.* at 899. Based on the evidence admitted during the trial, together with the reasonable inferences that are available from the evidence, the appellate court then determines whether a rational factfinder could have found the essential elements of the crime, under a beyond-reasonable-doubt standard of proof. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011).

With respect to Andrews' claim of self-defense, Andrews bore the burden to produce evidence supporting her defense; once Andrews introduced evidence showing that she acted in self-defense, the burden shifted to the State to disprove her defense, and the State was required to convince the jury, beyond reasonable doubt, that Andrews had not acted in self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003). Given that the jury found Andrews guilty, there is an implicit finding that the jury rejected Andrews' claim that she acted in self-defense. *Id.* at 594. When reviewing whether legally sufficient evidence supports a finding against the defendant's claim of self-defense,

> we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have

3

found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A person commits murder when she intentionally[1] or knowingly[2] causes the death of another person, or if she intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b). Generally, a person is justified in defending against another's use of deadly force. *See Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). Under the Penal Code, a person is justified in using deadly force (1) if she would be justified in using force against the other under section 9.31 of the Texas Penal Code, and (2) when and to the degree she reasonably believes the deadly force is immediately necessary to protect herself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32(a)(1), (a)(2)(A). Section 9.31 of the Penal Code justifies a person to use force "when and to the degree the actor reasonably believes the force is

---

[1]A person acts intentionally with respect to a result of her conduct when it is her conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011).

[2]A person acts knowingly with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (West 2011).

4

immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a).

Several additional standards guide our review of Andrews' case. In cases where the evidence is in conflict, the jury acts as the sole judge of the credibility of the witnesses, and it judges the weight to give to the testimony of the witnesses. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). By statute, a firearm is a deadly weapon. Tex. Penal Code Ann. § 1.07(17)(A) (West Supp. 2014). "The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon." *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). In determining a defendant's guilt, a jury may consider events that occurred before, during, and after the commission of the offense. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App.—Austin 2008, pet. ref'd).

## Analysis

According to the testimony before the jury, Andrews admitted that she shot Peddy from her porch, but claimed that she shot Peddy accidentally. In the statement that Andrews gave to the police shortly after the shooting, Andrews indicated that she first fired a warning, and then fired again, maybe two or three times, in Peddy's direction to scare him away. According to Andrews, Peddy

5

assaulted her shortly before she shot him, and she was scared of him. Pictures of Andrews, admitted during the trial, show scratches on Andrews' arm and redness on her face and neck. There was also testimony indicating that the police noticed the redness on Andrews' face during their investigation into Peddy's death. While Andrews claimed that she was afraid of Peddy, she also indicated that he had never assaulted her before the day that she shot him.

The evidence from the trial shows that Andrews and Peddy had a relationship with each other that had ended some time before the day the incident occurred. After their relationship ended, Peddy began dating Andrews' daughter. Due to his relationship with Andrews' daughter, Peddy frequently stayed at Andrews' house, as Andrews' daughter lived there.

The day the incident occurred, Peddy came to Andrews' home and left several times. In the statements Andrews gave the police, Andrews stated that Peddy was an alcoholic; that vodka made Peddy a "mean, hateful, ugly, and [a] totally different person[;]" and that in the past, Peddy had hit her daughter. Andrews also told the police during the investigation that Peddy was drinking vodka the day she shot him. An autopsy report showed that Peddy's blood alcohol concentration level was 0.261.

Andrews told the police that Peddy was intoxicated when he came to her house the evening that she shot him. She also indicated that her daughter, who was not at home the evening when Peddy came there, was aware he was at Andrews' home. Andrews' daughter called the police, and she requested that they go to Andrews' home to check on Andrews. When the police arrived, Andrews told the officer who arrived that Peddy was inside, and she told the officer that she thought he was about to fall asleep. Andrews assured the police that everything would be okay, and she indicated they did not need to do anything.

Peddy became agitated on learning that the police had been called to the home. After the officer left, Andrews indicated that she told Peddy to leave. Peddy went outside, but he did not leave. After hearing a noise, Andrews stepped onto her porch and saw Peddy throwing cement blocks into the windows and windshield of her car. Andrews went to her car, which was parked to the side of her house, outside a fenced yard. After approaching Peddy, Andrews and Peddy began to argue, and Peddy hit and shoved her.

K.H., who lived with Andrews, saw the altercation between Andrews and Peddy that occurred that evening near Andrews' car. K.H. stated during her testimony that she called 911. According to K.H., Peddy "was scary that night[,]" and she saw Peddy hit Andrews.

7

The statement Andrews gave to the police indicates that following the altercation near her car, Andrews returned to her house and locked the door. According to Andrews, Peddy came to the side of the porch, which was outside the fenced portion of her yard, and began to throw things at her as she left the porch to enter her home. Once inside, Andrews indicated that she went to her bedroom, got her rifle, and returned to the porch. Andrews told the police that she fired one warning shot away from Peddy. Andrews stated that Peddy began walking towards her after she fired the first shot, holding out his shirt, and telling her to shoot him. Andrews related that she then turned the rifle towards Peddy and fired additional shots, from her hip, one of which struck Peddy in the heart. The police estimated that the bullet struck Peddy approximately forty feet from where Andrews fired her rifle. Andrews did not testify at her trial.

Although jurors might have inferred from Andrews' statements that she never intended the bullets from her rifle to hit Peddy, it was also reasonable, on this record, for the jury to infer that Andrews was aware that her conduct—pointing the rifle towards Peddy and firing shots at him—was reasonably certain to cause Peddy's death. As the factfinder, the jury was free to disregard Andrews' claim that she did not mean to shoot Peddy when she fired at him. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (holding evidence was sufficient

to prove intent to kill despite appellant calling 911 and describing his actions as accidental during his confession); *Jones*, 944 S.W.2d at 648 (holding evidence was sufficient to prove intent to kill, despite appellant's statement that he "only wished to scare the victim"). We conclude that the evidence is legally and factually sufficient to support the jury's conclusion that Andrews intended to cause Peddy's death. *Jones*, 944 S.W.2d at 647.

With respect to Andrews' claim that she acted in self-defense, the jury could consider the circumstances before and after Peddy was shot. Based on the evidence before the jury, the jury could have inferred from the circumstances that Andrews' decision to shoot Peddy was not reasonably necessary, given the opportunity she had to stay inside the locked house, the circumstances of the altercation, and the distance from which Andrews fired after she returned to the porch. *See* Tex. Penal Code Ann. § 9.32(a)(1), (a)(2)(A); *Madrigal v. State*, 347 S.W.3d 809, 818 (Tex. App.—Corpus Christi 2011, pet. ref'd) (noting that while there was evidence tending to show the defendant had acted in self-defense, the factfinder was free to disbelieve that evidence and rely on other evidence tending to show that the defendant had not acted in self-defense).

After considering the evidence in the light most favorable to the jury's verdict, we conclude the evidence supports the jury's decision to convict Andrews

of murder and to reject her claim of self-defense. *See Gear*, 340 S.W.3d at 746;

*Saxton*, 804 S.W.2d at 914. We overrule Andrews' sole issue, and we affirm the

trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice


Submitted on July 29, 2014
Opinion Delivered December 10, 2014
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.