

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00135-CR

ROBERT MICHAEL AUSTIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1438107

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Shortly after midnight in early December 2015, even after Derek Embry, an officer with the Mansfield Police Department in Tarrant County,[1] tried various strategies to get Robert Michael Austin to stop the black 2007 BMW he was driving, Austin kept driving around the neighborhood for some time before finally stopping. As a result, Austin was charged by misdemeanor information with the offense of fleeing or attempting to elude a police officer. Following a jury trial, Austin was found guilty of the charged offense and was sentenced to ninety days' confinement in the county jail and a fine of $1,000.00. The trial court suspended the imposition of Austin's sentence and placed him on community supervision for twelve months. On appeal, Austin argues that the evidence is insufficient to support his conviction and that Section 133.102(a)(1) of the Texas Local Government Code, by which "consolidated court costs" were assessed against Austin, is unconstitutional.

We affirm the trial court's judgment, because (1) legally sufficient evidence supported Austin's conviction and (2) we may not strike the challenged costs.

*(1)     Legally Sufficient Evidence Supported Austin's Conviction*

In evaluating legal sufficiency of the evidence, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Austin was guilty of the charged offense. *See Brooks v. State*, 323

---

[1] Originally appealed to the Second Court of Appeals in Fort Worth, Austin's case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Because this is a transfer case, we apply the precedent of the Second Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of fleeing or attempting to elude a police officer if "the person operates a motor vehicle and willfully fails or refuses to bring the vehicle to a stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop." TEX. TRANSP. CODE ANN. § 545.421 (West 2011). The State's misdemeanor information against Austin stated,

> That Robert Michael Austin, hereinafter called Defendant, in the county of Tarrant and State aforesaid, on or about the 3rd day of December 2015, did operate a motor vehicle and willfully fail or refuse to bring the vehicle to a stop or willfully fled, or attempted to elude a pursuing police vehicle when given a visual or audible signal to wit: emergency light, to bring the vehicle to a stop, and said police vehicle was appropriately marked as an official police vehicle and was operated by E. Embry, a uniformed peace officer prominently displaying the officer's badge of office.

3

At trial, Embry testified that, at about 12:30 a.m. on December 3, 2015, he observed the automobile driven by Austin circling around two streets in a residential neighborhood. According to Embry, there were only two streets on which an automobile could enter the neighborhood and two streets on which to exit. Embry stated there had been a wave of burglaries in the area, and on observing a vehicle "just driving around," he became interested as to where the occupant was traveling. Embry observed Austin driving very slowly, between ten and twenty miles per hour, in a thirty-mile-per-hour zone. Embry testified that, when Austin's vehicle came to multiple stop signs, he failed to signal. Austin's vehicle "just kept making the four same streets, almost like a square." Embry explained that Austin continued to drive in circles at a slow rate of speed and that, in his opinion, a person driving in that manner was behaving suspiciously.

After Embry observed Austin failing to use his turn signal several times, he initiated a traffic stop by turning on his overhead emergency lights. Embry stated that his overhead lights were activated and operating for a period of ninety seconds to two minutes, but that Austin failed to pull to the side of the street. According to Embry, there were several safe locations for Austin to have stopped his vehicle, including three stop signs,[2] but he failed to do so. Embry explained that, after Austin failed to stop in response to his emergency lights, he then initiated his sirens. When Austin continued driving, Embry began intermittently "bumping the air horn," which is "much louder than a normal car horn." Embry stated that he bumped his emergency siren multiple times, but Austin continued driving. Embry explained that Austin made another pass through the

_____

[2]Austin stopped at the stop signs, but continued driving after he stopped.

4

neighborhood, stopped at another stop sign, and then turned right. After making the right turn, Austin stopped in a driveway at the end of a cul-de-sac. According to Embry, Austin's behavior was "intentional."

Austin claims that no evidence established his willful failure or refusal to stop his vehicle and that he stopped his car within a reasonable time after being signaled to do so. We disagree. The evidence supports a finding that Austin willfully failed to stop his vehicle when Embry turned on his lights and sirens. Considering that (1) Austin was driving at a very low rate of speed, (2) in a confined residential neighborhood, and (3) in the middle of the night and that (4) Embry followed closely behind him for almost two minutes with his lights, sirens, or both activated, the trial court could have reasonably inferred that Austin willfully refused to stop.

We overrule this point of error.

*(2)*	*We May Not Strike the Challenged Costs*

Austin also challenges the assessment of "consolidated court costs," which is statutorily mandated by Section 133.102 of the Texas Local Government Code.[3] The fees at issue were to be allocated to an account for "abused children's counseling," an account for "law enforcement officers standards and education," and an account for "comprehensive rehabilitation." Austin

---

[3]Section 133.102(e) of the Texas Local Government Code lists the accounts to which the court costs shall be allocated: (1) abused children's counseling; (2) crime stoppers assistance; (3) breath alcohol testing; (4) Bill Blackwood Law Enforcement Management Institute; (5) law enforcement officers standards and education; (6) comprehensive rehabilitation; (7) law enforcement and custodial officer supplemental retirement fund; (8) criminal justice planning; (9) an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A & M University; (10) compensation to victims of crime fund; (11) emergency radio infrastructure account; (12) judicial and court personnel training fund; (13) an account in the state treasury to be used for the establishment and operation of the Correction Management Institute of Texas and Criminal Justice Center Account; and (14) fair defense account. TEX. LOC. GOV'T CODE ANN. § 133.102(e) (West Supp. 2016).

5

contends these fees violate the Separation of Powers Clause of the Texas Constitution,[4] rendering the entire statute unconstitutional.

A fee statute is considered constitutional if it provides for the allocation of court costs to be dispersed for a legitimate criminal justice purpose, meaning it must be related to the administration of our criminal justice system. *Peraza v. State*, 467 S.W.3d 508, 517–18 (Tex. Crim. App. 2015), *cert. denied*, 136 S.Ct. 1188 (2016). Austin has the burden to establish the statute's unconstitutionality. *Id.* at 514. When we review the constitutionality of a statute, "we commence with the presumption that such statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting the statute." *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). "We must seek to interpret a statute such that its constitutionality is supported and upheld." *Peraza*, 467 S.W.3d at 514. In order to successfully mount a facial challenge to Section 133.102 of the Texas Local Government Code, Austin must establish that there are no circumstances under which the statute would be valid. *Id*. at 515.

The Texas Court of Criminal Appeals recently addressed this issue, declaring Section 133.102 of the Texas Local Government Code facially unconstitutional to the extent the funds collected were dispersed to the accounts for "abused children's counseling" and "comprehensive

---

[4]The separation of powers between the branches of government is expressly guaranteed in the Texas Constitution:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.

rehabilitation." *See Salinas v. State*, No. PD-0170-16, 2017 WL 915525 (Tex. Crim. App. Mar. 8, 2017). In *Salinas*, the court concluded,

> [W]ith respect to the collection and allocation of funds for [abused children's counseling and comprehensive rehabilitation] the statute is facially unconstitutional in violation of separation of powers. We also hold, however, that the invalidity of these two statutory provisions does not render the statute as a whole unconstitutional. As a result, we hold that any fee assessed pursuant to the consolidated fee statute must be reduced pro rata to eliminate the percentage of the fee associated with these two accounts. We reverse the judgment of the court of appeals and render judgment modifying the court costs in appellant's case.

*Id*. at *1. Thus, based on *Salinas*, we agree with Austin's argument that imposing fees allocated to these two accounts is unconstitutional.

However, the Texas Court of Criminal Appeals also explained in *Salinas* that its holding had a limited retroactive applicability.[5] *Id*. at *6. In determining the retroactive effect of its holding, the *Salinas* court balanced (1) the new standard's purpose, (2) the extent law enforcement authorities rely on the old standards, and (3) the effect a retroactive application of the new standard would have on the administration of justice. *Id*. "The outcome of this balancing test will generally turn on whether the new rule impacts the truth-finding function or is merely procedural." *Id*.

In ruling against retroactivity, the high court reasoned that the costs a defendant pays has nothing to do with the truth-finding function. "It is a financial burden on the defendant, but there

---

[5]The court explained,

> Retroactivity principles are implicated if the holding of a court announces a "new" rule. When the issue is one of statutory interpretation, a rule is new only when it is a "clear break" with the past. But because a statute is presumed to be constitutional until it is determined otherwise, we conclude that declaring a statute constitutional on its face is a "new" rule sufficient to invoke a retroactivity analysis.

*Salinas*, 2017 WL 915525, at *5.

7

is nothing inherently inappropriate about making the defendant pay a fee as a result of being convicted or otherwise suffering an adverse outcome in criminal proceedings." *Id*. It also concluded that the State's reliance interests were significant, especially in relation to money being collected for comprehensive rehabilitation. *Id.* Finally, the court determined that imposing the holding retroactively could have an overwhelming impact on court clerks throughout the State. *Id*. The court severely limited the retroactive application of its ruling:

> We do, however, recognize the need to reward parties who persuade a court to overturn an unconstitutional statute, and we conclude that applying the new constitutional rule to the parties in the present case is necessary, but not quite sufficient to satisfy that need. Other defendants have challenged one or both of the fees at issue in petitions for discretionary review before this Court and can be said to have exerted some influence in procuring our current holding. Therefore, we will also apply our constitutional holding in this case to any defendant who has raised the appropriate claim in a petition for discretionary review before the date of this opinion, if that petition is still pending on the date of this opinion and if the claim would otherwise be properly before us on discretionary review. Otherwise, our holding will apply prospectively to trials that end after the date the mandate in the present case issues.

*Id*. (citations omitted). Accordingly, the Texas Court of Criminal Appeals has directed the lower courts not to modify the trial court's judgment by reducing the consolidated fees allocated to the account for "abused children's counseling" and the account for "comprehensive rehabilitation." We must therefore abide by the court's instruction, precluding us from retroactively applying the holding in *Salinas* to this case. *See Hawkins v. State*, No. 02-16-00104-CR, 2017 WL 1352097 (Tex. App.—Fort Worth Apr. 13, 2017, no pet. h.).

Austin also complains of the collection of court costs that are allocated to the "law enforcement officers standards and education" account. In *Ingram v. State*, the Fort Worth Court of Appeals addressed this argument, finding that the statutory allocation of fees into this particular

8

account provided money to be spent on a legitimate criminal justice purpose that related to the administration of our criminal justice system and, thus, was constitutionally sound. *Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.—Fort Worth 2016, pet. ref'd). Austin has not provided us with a persuasive argument which would compel us to conclude otherwise. For these reasons, we overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:    March 30, 2017
Date Decided:    May 24, 2017

Do Not Publish