Helen LEWANDOWSKI et al.,
Appellants,

v.

John C. DANFORTH, Attorney General,
State of Missouri, Respondent.

No. 59509.

Supreme Court of Missouri,
en banc.

March 14, 1977.

Charles C. Shafer, Jr., Kansas City, for appellants.

Harvey M. Tettlebaum, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

In this cause, the constitutionality of § 407.040, RSMo Supp.1973, is questioned. It reads as follows:

"1. When it appears to the attorney general that a person has engaged in or is engaging in any act or practice declared to be unlawful by sections 407.010 to 407.130 or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in or is engaging in any such act or practice, he may execute in writing and cause to be served upon any person who is believed to have information, documenta-

ry material, or physical evidence relevant to the alleged or suspected violation, an investigative demand requiring such person to appear and testify, or to produce relevant documentary material or physical evidence for examination, at such reasonable time and place as may be stated in the investigative demand, concerning the advertisement, sale or offering for sale of any goods or services or the conduct of any trade or commerce that is the subject matter of the investigation; except that, this section shall not be applicable to criminal proceedings.

"2. Each civil investigative demand shall

"(1) State the statute and section thereof, the alleged violation of which is under investigation, and the general subject matter of the investigation;

"(2) Describe the class or classes of information, documentary material, or physical evidence to be produced thereunder with reasonable specificity so as fairly to indicate the material demanded;

"(3) Prescribe a return date within which the information, documentary material, or physical evidence is to be produced; and

"(4) Identify the members of the attorney general's staff to whom such information, documentary material, or physical evidence is to be made available.

"3. No civil investigative demand shall:

"(1) Contain any requirement which would be unreasonable or improper if contained in a subpoena duces tecum issued by a court of this state; or

"(2) Require the disclosure of any documentary material which would be privileged, or which for any other reason would not be required by a subpoena duces tecum issued by a court of this state.

"4. Service of any civil investigative demand, notice, or subpoena may be made by:

"(1) Delivering a duly executed copy thereof to the person to be served or to a partner or to any officer or agent authorized by appointment or by law to receive service of process on behalf of such person;

"(2) Delivering a duly executed copy thereof to the principal place of business in this state of the person to be served; or

"(3) Mailing by registered or certified mail a duly executed copy thereof addressed to the person to be served at the principal place of business in this state or, if said person has no place of business in this state, to his principal office or place of business;

"(4) The mailing thereof by registered mail, requesting a return receipt signed by the addressee only, to the last known place of business, residence or abode within or without this state of such person for whom the same is intended."

Appellants, the principals of Pen Pals International (PPI), instituted this proceeding by filing in the Circuit Court of Jackson County a Petition to Set Aside the Civil Investigative Demand (CID) issued by Respondent, the Attorney General of Missouri. The CID called for production by appellants of:

1. the actual number of solicitations mailed by PPI to Missourians since January 1, 1975;

2. the number of State residents who enrolled with PPI under the "half price discount offer";

3. the names of members across the nation who are known by PPI to have formed "strong and romantic attachments" and "marriages" that resulted from associations formed through PPI;

4. a gross income and cost statement, including the salaries, wages and profits of all employees and owners;

5. a list of names, addresses and phone numbers of all Missourians who have joined PPI since January 1, 1975;

6. a list of the names and addresses of all employees, past or present, of PPI since January 1, 1975.

The information sought by Respondent was demanded under the authority of § 407.040, supra. Respondent claimed to believe appellants have used "fraud, decep-

tion or misrepresentation in connection with the sale and advertisement of the above goods and services including, but not limited to misrepresentation of the enterprise as a non-profit organization, and misrepresentation of the possibility of forming 'strong and romantic' attachments through referrals by Pen Pals International."

In response to appellants' petition, Respondent filed a motion to dismiss on the grounds of improper venue and because the petition failed to state a cause of action. The circuit court agreed that no cause of action was stated in the petition, and the case was dismissed without prejudice and with 20 days leave granted appellants to file an amended petition. Appellants filed a Motion to Set Aside the Court's Order which was overruled. Appeal was perfected to this Court.

Before considering the challenges to § 407.040, supra, which authorizes the Attorney General of this State to issue a CID, we note the similarity of § 407.040 to procedures in the Federal Antitrust Civil Process Act found codified at 15 U.S.C.A. § 1312. Since the Missouri CID statute has received virtually no judicial attention, the best available authority on the subject consists of federal decisions which have construed and applied the provisions of the Federal Antitrust Civil Process Act. (In *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 363 (Mo.App.1973), Judge Wasserstrom noted the parallel between the federal and state laws but did not find it necessary to rule on the authority and scope of a CID). *See generally,* Annot. 10 A.L.R. Fed. 677; von Kalinowski, *Antitrust Laws and Trade Regulations,* Vol. 16L, § 93 (1976).

■ Appellants allege in a vague and indefinite fashion that the CID procedure denies them due process of law. An examination of § 407.040 and § 407.070 reveals that persons served with a CID are fully afforded the protection of procedural due process. In *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) the Supreme Court said:

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' *Baldwin v. Hale,* 1 Wall. 223, 233, 68 U.S. 223, 233, 17 L.Ed. 531, 534. See *Windsor v. McVeigh,* 93 U.S. 274, 23 L.Ed. 914; *Hovey v. Elliot,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215; *Grannis v. Ordean,* 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363. It is equally fundamental that the right to notice and opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66."

■ Moreover, due process is not a static or rigid concept. As recognized in *Stanley v. Illinois,* 405 U.S. 645, 650, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972), "due process of law does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria Workers v. McElroy,* 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961). That case explained that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' and firmly established that 'what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Id., at 895, 81 S.Ct., at 1748 [6 L.Ed.2d at 1236]; *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970)."

Although in this instance the government function involved, that of investigation of suspect merchandising practices, is one of considerable importance to the general public, the legislature has not bestowed unbridled authority upon the Attorney General to pursue this mission at the expense of any individual's entitlement to procedural due process.

A CID issued by the Attorney General must comport with the requirements of § 407.040 which requires reasonable notice of the conduct under investigation and specific notice of the documents to be produced. *See generally, Hyster Co. v. United States,* 338 F.2d 183 (9th Cir. 1964); and in *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391 (D.C.Minn.1963) *aff'd* 325 F.2d 1018 (8th Cir. 1964).

Regarding the opportunity to be heard, we must conclude procedural due process has been fully incorporated by statute within the CID process and that persons are afforded adequate notice and a meaningful opportunity to be heard. Section 407.070, RSMo Supp.1973, reads as follows:

"At any time before the return date specified in the demand, or within twenty days after the demand has been served, whichever period is shorter, a petition to extend the return date for, or to modify or set aside the demand, stating good cause, may be filed in the circuit court of the county where the parties reside or in the circuit court of Cole county."

Appellants finally assert they should not be compelled to disclose certain information in response to the CID because such information constitutes trade secrets. The assertion is premature. It may be made at the time the Attorney General seeks to present such information before any court. § 407.060, RSMo Supp.1973.

The judgment is affirmed.

All concur.